Filed 7/31/13  P. v. Hunt CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOHN HOWARD HUNT,<br><br>    Defendant and Appellant. | A138049<br><br>(San Mateo County<br>Super. Ct. No. SC076557) |

John Howard Hunt (appellant) appeals from a judgment entered after he pleaded no contest to attempted murder (Pen. Code, §§ 187, 664 subd. (a)[1]), admitted the offense was a serious and violent felony (§§ 1192.7, subd. (c)(8), 667.5, subd. (c)(8)), and admitted a domestic violence great bodily injury enhancement (§ 12022.7, subd. (e)). Appellant's counsel has filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 and requests that we conduct an independent review of the record.  Appellant was informed of his right to file a supplemental brief and did not file such a brief.  Having independently reviewed the record, we conclude there are no issues that require further briefing and affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

An information was filed on September 28, 2012, charging appellant with attempted premeditated murder (§§ 187, 189, 664, subd. (a), count one), corporal injury of a spouse resulting in traumatic condition (§ 273.5, subd. (a), count two), assault with a

---

[1]  All further statutory references are to the Penal Code unless otherwise stated.

1

deadly weapon (§ 245, subd. (a)(1), count three), assault likely to cause great bodily injury (§ 245, subd. (a)(4), count four), and kidnapping (§ 207, subd. (a), count five). The information alleged a domestic violence great bodily injury enhancement (§ 12022.7, subd. (e)) as to counts one through four and further alleged as to all counts that the offenses were serious and violent felonies (§§ 1192.7, subds. (c)(8), (20), (23), (39), 667.5, subds. (c)(8), (12), (14)).

The information was based on an incident that occurred on May 5, 2012.[2] The victim, Susan Boyer, and appellant had been married for over 20 years at the time of the incident. Before the incident occurred, Boyer had been spending most of her time in Half Moon Bay while appellant lived in San Diego County. They spoke on the phone everyday, spent time together every couple of months, and went on some trips and attended events together. On the night before the incident, Boyer and appellant were together in Half Moon Bay when Boyer told appellant she wanted a divorce. Appellant was "[k]ind of sad and mad," did not want the divorce, and said "stuff like" " 'I suppose now you're going to want my money so you can buy or build a house.' " Appellant further told Boyer that he had been miserable during the "last 12 years," that Boyer was a "mean, mean person," and that "karma was going to get [her]." The conversation lasted "[m]aybe an hour or two" and "it was very emotional."

The next morning, the two met for breakfast in Pacifica where appellant asked Boyer if she had "told anybody" about the divorce and accused Boyer of not "know[ing] how to be intimate." The conversation took place over breakfast and no voices were raised. After they finished breakfast, they got inside Boyer's car and appellant drove the two back towards Half Moon Bay. At some point, appellant pulled off at a "dirt spot," which she did not think was unusual because she assumed he was stopping to "take a pee." Appellant was gone for a couple of minutes, returned to the car, and drove to a small, wooded, secluded paved road, just below where they had parked. Appellant turned the car around on this road, then got out of the car. He came to the passenger side of the

---

[2] The facts below are taken from the transcript of the preliminary hearing.

car, opened Boyer's door, and asked if she would give him a hug. Boyer thought it was "a little odd" but she "thought he was hurting," and she felt "sorry for him and thought he needed a hug." The two were hugging for "a fairly long [time]. . . . Maybe 30 seconds," when appellant suddenly repositioned himself, "grabbed [her] head and started pounding it against the back of the car" multiple times as hard as he could. When Boyer started screaming, " 'God, no. God, no,' " appellant punched her with his fist in her face and she landed on the ground, on her stomach. Boyer, who is about 120 pounds, thought that appellant, who is nine inches taller and 200 pounds, was going to kill her. Appellant tried to choke Boyer with his hands and Boyer had difficulty breathing and eventually passed out.

When Boyer "came to," she noticed that appellant was also out of breath. Boyer struggled to keep appellant's hands off her and "did everything [she] could think of," including trying to kick him when he was on top of her, trying to "wiggle free," or trying to use a stick she found on the ground to hit him. She also wanted to bite him but she had appliances in her mouth that would have made that difficult. Boyer also reached into her pocket to call 9-1-1 on her cell phone but the phone was knocked out of her hand. Boyer "pleaded for [her] life" the "whole time" saying such things as, "How can you do this to your mother? How can you do this to your grandchildren? Don't kill me." She told him she loved him and would do anything he wanted. She also asked why he was trying to kill her when he had not tried to kill his ex-wife, who he hated. Appellant responded, " 'Because what you did to me was ten times worse.' " When Boyer asked him what she had done, he responded, " 'If you don't know, then that's even worse.' "

The two continued to wrestle and struggle on the ground with Boyer on her back when appellant tried to break her neck and started choking her again. When Boyer tried to twist away, she injured her knee. Appellant then "started looking up and down the street like he was nervous" and told Boyer to get in the car. Boyer resisted but appellant "pushed" her and forced her back in.

Inside the car, while parked, Boyer honked the horn and hit appellant twice over the head with her water bottle. Appellant grabbed the water bottle and hit her in the head

3

with it five to ten times before she was able to get it back and tossed it to where he could not reach it.  Appellant then tried to put something around her neck.  Boyer tried to hook her thumb underneath to prevent him from doing so but she was unsuccessful.  Appellant choked Boyer again, and she started to gag and passed out.

When Boyer "came to," appellant was starting to drive off, so Boyer stuck her feet straight out the passenger door to prevent him from closing the passenger door.  Boyer also turned off the ignition but was unable to get the key out.  Appellant pushed Boyer away, turned the ignition back on, and continued driving.  Boyer's head was down so she could not see anything, but she could tell they had gotten back onto the highway.  As appellant began driving "faster," Boyer became "scared that he was going to run the car into another car or a tree or something."  She "figured [she] had to stop the car no matter what," so she reached up and turned the ignition off, and, with her left hand, shoved the gear shift into park and yanked the key out.  The car "skidded to a halt across the highway," and she jumped out and waved her arms in the middle of the highway.  A car stopped for her, and she told the driver, " 'My husband is trying to kill me.  I need help.' "  The driver opened his door and said, " 'Get in.' "

A police officer arrived at the scene and contacted Boyer, who had a belt wrapped around her neck, was having difficulty breathing, and appeared to be moving in and out of consciousness.  She was bleeding profusely from her head with numerous lacerations around her mouth and lip area.  Boyer told the officer that her husband had tried to kill her.  Boyer suffered lacerations on her head, bruising, a hematoma, a twisted knee, and severe chest pains, with a possibility of a cracked rib, although none showed up on the x-rays.

On December 27, 2012, appellant pleaded guilty to attempted murder without premeditation, admitted the offense was a serious and violent felony, and admitted the domestic great bodily injury enhancement.  His attorney stipulated that there was a factual basis for the plea and each of the admissions.  In exchange, the remaining charges and enhancements were dismissed and the parties agreed appellant would be sentenced to 12 years in prison.  The trial court sentenced appellant to 12 years in prison in accordance

4

with the terms of the plea agreement. In his notice of appeal, appellant requested a certificate of probable cause on the ground that his attorney was ineffective in failing to investigate possible defenses and failing to adequately advise him. He asserted he therefore did not knowingly and willingly enter his plea. The court denied appellant's request for a certificate of probable cause.[3]

## DISCUSSION

We have reviewed the entire record and conclude there are no arguable issues that warrant further briefing. There is no clear and convincing evidence of good cause to allow appellant to withdraw his plea. Appellant was adequately represented by counsel at every stage of the proceedings. There was a factual basis for the plea. There was no sentencing error. There are no issues that require further briefing.

## DISPOSITION

The judgment is affirmed.

_____
McGuiness, P. J.

We concur:

_____
Pollak, J.

_____
Jenkins, J.

_____

[3] Appellant states in his brief that his request for a certificate of probable cause was granted on March 5, 2013. However, the record shows the court denied his request on that date.

5